**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WATERBEDS "N" STUFF, INC., Respondent.**

**No. 79–1001.**

United States Court of Appeals, Sixth Circuit.

Oct. 23, 1980.

Elliott Moore, Deputy Associate Gen. Counsel, Jay Shanklin, James Callear, N. L. R. B., Washington, D. C., Emil Farkas, Director, Region 9, N. L. R. B., Cincinnati, Ohio, for petitioner.

Robert M. Weinberger, Moots, Hultin, Weinberger & Cope, Columbus, Ohio, for respondent.

Before MERRITT and MARTIN, Circuit Judges and GORDON, Senior District Judge.*

## ORDER

The N.L.R.B. petitions for enforcement of an order against defendant, Waterbeds "N" Stuff, based upon a finding that the company had violated § 8(a)(1) of the National Labor Relations Act. The N.L.R.B. found that the defendant had warned employees to abandon the idea of engaging in concerted activities to improve their working conditions, and after the warning had discharged three employees because they engaged in protected concerted activities. The sole issue is whether there is substantial evidence in the record as a whole to support the N.L.R.B. findings.

In late July of 1977, employees of Waterbeds "N" Stuff met with Sales Manager McWilliams to voice employee dissatisfaction with the lack of a time clock, wage rates, overcrowded conditions in the warehouse, lack of prior notice when overtime was needed, and shortage of equipment. When conditions did not improve significantly, employees began to discuss organizing to present their position. Two employees, Gerald Smith and Ed Conzola, were active in publicizing their efforts to other employees. On September 12, 1980, Gerald Smith and Timothy Ryan, as employee representatives, met with Mr. Spero, president of the company. The meeting was interrupted by a phone call from Manager McWilliams, who was away on a short vacation. The meeting with Spero continued later in the afternoon with additional employees present. The meeting was characterized as "spirited." (Decision of ALJ, A.4) On September 13th McWilliams abruptly returned from his vacation and warned one employee that if anything were to be accomplished, "assuming that some or all of us were going to be staying, . . ." that the employees should forget any ideas of unionizing. McWilliams questioned two employees concerning drinking on the job. One employee showed McWilliams where beer was hidden and another reported that five individuals had drunk beer on a very hot day in August. On September 14th McWilliams discharged Ed Conzola and Tim Ryan. Gerald Smith was absent on that

day but upon his return to work he was also fired. According to the company, Conzola was fired because he was unable to accept criticism, that he drank on the job, and that he misused company time and supplies. Prior to his termination, McWilliams had never criticized Conzola, had recommended him for a raise in July, and told him that if he continued to improve he would be in line for another raise. Ryan was ostensibly discharged because of poor appearance and bad attitude, excessive lateness, questionable use of company time, and drinking on the job. Ryan had been warned once about his lateness prior to the firing. Smith was discharged on grounds that his personal life was interfering with his ability to do the job, that he made shipping and receiving errors, and that he had participated in a work slowdown. Smith had been warned once about lateness, but no other complaints had been made. In August McWilliams had complimented Smith on his work.

The company vigorously contends that prior to the termination of the individuals the company had experienced a serious backlog in the processing of merchandise. McWilliams and Spero had determined prior to the labor problems that lack of diligence on the part of several employees was the cause of the backlog. Employee terminations were delayed until after McWilliams' vacation so that he would be available to supervise the replacements. The Administrative Law Judge found that cause may have existed for the termination of some of the employees, but was unpersuaded that the company had met its burden of showing that the discharges were motivated by legitimate objectives. The ALJ concluded that the backlog could be attributed to the actions of employees other than those discharged.

The ALJ found very persuasive the facts that little prior warnings had been given to the discharged employees. In addition the evidence indicates that the three discharged employees were leaders in the movement to organize. In light of these facts, there appears to have been substantial evidence in the record as a whole to support the N.L.R.B. finding that the company violated

§ 8(a)(1) of the National Labor Relations Act.

We accordingly affirm.

